IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHERYL Y. JERNIGAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-2580-N-BN |
| | § | |
| CHARLES B. MCMILLAN and YOUTUBE, INC., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

In this lawsuit referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief United States District Judge David C. Godbey, Plaintiff Cheryl Y. Jernigan filed a *pro se* complaint against Defendants Charles B. McMillan and YouTube, Inc., *see* Dkt. No. 4, which she later amended, *see* Dkt. No. 36.

Jernigan voluntarily dismissed her claims concerning YouTube with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See* Dkt. No. 47.

And the Court granted Jernigan's motion for substituted service as to McMillan insofar as the Court authorized service on McMillan through his YouTube channel/account by a person authorized to serve process and directed Jernigan to file proof of substituted service consistent with the Court's order by April 11, 2023. *See* Dkt. Nos. 28, 29; *see also Jernigan v. McMillan*, No. 3:22-cv-2580-N-BN, 2023 WL 2668002 (N.D. Tex. Mar. 27, 2023) (recounting Jernigan's evidence documenting three failed attempts to serve McMillan at his physical address in Chapin, South

Carolina and authorizing substituted service).

Jernigan then served McMillan utilizing the substituted service order. *See* Dkt. Nos. 34-37, 40. And, insofar as Jernigan believed that McMillan was properly served, such that he is susceptible to default under Federal Rule of Civil Procedure 55, the Court directed Jernigan to move for entry of default and for default judgment against McMillan under Rule 55 by September 5, 2023. *See* Dkt. No. 53.

Jernigan did. *See* Dkt. No. 57. And the Clerk of Court entered default as to McMillan the next day. *See* Dkt. No. 58.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should deny the motion for default judgment and enter judgment dismissing this lawsuit without prejudice.

**Legal Standards**

When a defendant has "failed to plead or otherwise defend" an action, the Court may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

In this circuit, there is a required three-step procedure to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*,

84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults").

Even though the United States Court of Appeals for the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide whether default judgment is appropriate: (1) "whether the default was caused by a good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893. Default judgment can also appropriate where a defendant fails to follow court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to

a defendant's "delay and failure to comply with court rules").

Second, the Court must assess the merits of the plaintiff's claims and find a "sufficient basis in the pleadings for the judgment entered.*" Nishimatsu*, 515 F.2d at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (per curiam))).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). "[I]n the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing … [except] where the

amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311. Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Two other caveats apply. "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis*, 236 F.3d at 767 (citations omitted). And, before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

## Analysis

Deciding a motion for default judgment "begins, as it must, by examining the Court's jurisdiction." *Wattiker v. Elsenbary Enters., Inc.*, No. 3:22-cv-940-B-BN, 2023 WL 5167023, at *3 (N.D. Tex. May 19, 2023) (cleaned up; quoting *Hammerschmidt v. Garland*, 54 F.4th 282, 287 (5th Cir. 2022)), *rec. accepted*, 2023 WL 5167019 (N.D.

Tex. June 13, 2023); *accord Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (citation omitted)).

For Jernigan's motion, it ends there too, because Jernigan has not shown that the Court has jurisdiction over McMillan, a nonresident defendant.

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows, we only consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Two types of personal jurisdiction may be exercised over a nonresident defendant: general and specific.

"General jurisdiction 'requires continuous and systematic forum contacts and allows for jurisdiction over all claims against the defendant, no matter their connection to the forum.'" *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (quoting *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018)). So "it is 'incredibly difficult to establish general jurisdiction in a forum other than'" where a defendant is at home. *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (quoting *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020)).

"Specific jurisdiction, on the other hand, demands a connection between the

suit and the forum," *Zoch*, 810 F. App'x at 288 (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 582 U.S. 255, 262 (2017)). Accordingly, it "focuses on the relationship among the defendant, the forum, and the litigation." *Seville*, 53 F.4th at 895 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

> In evaluating whether due process permits the exercise of specific jurisdiction, [courts in this circuit] consider
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.
> If the plaintiff establishes the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); footnote omitted).

"For there to be minimum contacts, a defendant must have 'purposefully availed himself of the benefits and protections of the forum state' 'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007), then *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting, in turn, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))).

"In other words, for specific personal jurisdiction to exist over [a nonresident defendant], there must be an affiliation between the forum and the underlying controversy." *Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789, 794 (5th Cir. 2024) (cleaned

up; quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)).

This "constitutional touchstone" "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 474, 475 (cleaned up).

"That is, the plaintiff cannot supply 'the only link between the defendant and the forum.'" *Carmona*, 924 F.3d at 924 (quoting *Walden*, 571 U.S. at 285). "Rather, jurisdiction is proper only where the 'defendant *himself*' made deliberate contact with the forum." *Id.* (quoting *Walden*, 571 U.S. at 284 (quoting, in turn, *Burger King*, 471 U.S. at 475)).

Through the operative complaint, Jernigan seeks millions of dollars in damages against McMillan for "cyberbullying, texts, [and] cyberstalking," because McMillan called Jernigan a "toothless tiger" and a "sexual predator" on YouTube. Dkt. No. 36.

But Jernigan fails to show that McMillan is at home in Texas, such that there is general jurisdiction over him. *See Williams v. Licari*, ___ F. Supp. 3d ___, No. 4:22-cv-5-ALM-KPJ, 2023 WL 6048774, at *5 (E.D. Tex. Sept. 14, 2023) ("Defendant's activity, posting a YouTube video that could be viewed in Texas, is not 'continuous and systematic' such that Defendant is 'essentially at home in the forum.'" (quoting *Frank*, 947 F.3d at 341 ("A business ... is not 'at home' in Texas merely because it solicits business from Texans."))).

Jernigan also fails to show that McMillan made deliberate contact with Texas

through his alleged posts defaming her on YouTube, such that the Court may assert specific jurisdiction over McMillan. *See Lamont v. Assaf*, No. 3:21-cv-1176-K-BN, 2022 WL 362573, at *8 (N.D. Tex. Jan. 18, 2022) ("Even had Plaintiffs alleged that Van Sciver knew that Poulter resides in Texas, they fail to present allegations showing that Van Sciver's actions were both 'expressly aimed' at Texas and 'calculated to cause injury to' Poulter in Texas. As such, Van Sciver's only alleged connection to Texas – that he allegedly defamed a Texan on the internet – is just 'random, fortuitous, [and] attenuated.'" (quoting *Calder v. Jones*, 465 U.S. 783, 789, 790 (1984); *So. U.S. Trade Ass'n v. Unidentified Parties*, No. Civ. A. 10-1669, 2011 WL 2457859, at *11 (E.D. La. June 16, 2011) (quoting, in turn, *Burger King*, 471 U.S. at 474))), *rec. accepted*, 2022 WL 357174 (N.D. Tex. Feb. 7, 2022); *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) ("A rising YouTube star enables advertising on his channel, then libels someone in a video he posts there. If the dissent is right, all fifty states may hale him into court to answer for it. But our law is clear that more is needed to protect due process. How much more is a question for another day."); *see also Shippitsa Ltd. v. Slack*, No. 3:18-cv-1036-D, 2019 WL 2372687, at *6 n.3 (N.D. Tex. June 5, 2019) ("'[C]ourts have applied the [test established by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997),] to social media websites and held that personal jurisdiction is not established by merely posting content on websites such as Facebook,' because Facebook postings are not sufficiently commercial or interactive." (citation omitted)); *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 399-400 (E.D. Tex. 2022) ("[A]gain,

Nunes has presented no facts that NBCU's website specifically targeted Texas viewers. Rather, even if interactive, the website and YouTube channel – and thus the Report's publications there – were 'accessible to anyone in the world with an [I]nternet connection.' And as the Fifth Circuit recently affirmed, '[a]ccessibility alone cannot sustain our jurisdiction.'" (citations omitted)); *Williams*, 2023 WL 6048774, at \*6 (E.D. Tex. Sept. 14, 2023) ("Plaintiff has not provided sufficient evidence or allegations that Defendant's posting the video on YouTube targeted Texas…. Here, Defendant posted the video from Australia and Plaintiff was able to access it from the 'foreign jurisdiction' of Texas. This action did not target Texas any more than it targeted any other state or country." (citations omitted)).

And because Jernigan fails to show that the Court has jurisdiction over the sole remaining defendant, the Court should deny the motion for default judgment and dismiss this lawsuit without prejudice. *See, e.g.*, *Cantu v. Platinum Mktg. Grp., LLC*, No. 1:14-CV-71, 2015 WL 13912331 (S.D. Tex. July 13, 2015).

## Recommendation

The Court should deny Plaintiff Cheryl Y. Jernigan's motion for default judgment [Dkt. No. 57] and enter judgment dismissing this lawsuit without prejudice for Jernigan's failure to show that the Court has jurisdiction over Defendant Charles B. McMillan, the sole remaining defendant.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections

within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: April 16, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE